FILED
09-09-2026
Clerk of Circuit Court
Waukesha County
2026CV001605

STATE OF WISCONSIN CIRCUIT COURT WAUKESHA COUNTY

---

NOCAMS MUSKEGO, INC.
PO Box 485
Muskego, WI 53150

CITIZENS DEFENDING LIBERTY
1241 North Franklin Place
Milwaukee, WI 53202

DONAVAN HAIDINGER
1320 Rosewood Court
Oconomowoc, WI 53066

Declaratory Judgment
Case Code: 30701
Case No. 26-CV

Plaintiffs,

v.

CITY OF MUSKEGO
W182 S8200 Racine Avenue
Muskego, WI 53150

CITY OF OCONOMOWOC
174 E. Wisconsin Avenue
Oconomowoc, WI 53066

CITY OF NEW BERLIN
3805 S. Casper Drive
New Berlin, WI 53151

VILLAGE OF MUKWONAGO
440 River Crest Court
Mukwonago, WI 53149

CITY OF WAUKESHA
201 Delafield Street
Waukesha, WI 53188

CITY OF DELAFIELD
500 Genesee Street
Delafield, WI 53018

VILLAGE OF HARTLAND
210 Cottonwood Avenue
Hartland, WI 53029

CITY OF BROOKFIELD
2000 N. Calhoun Road
Brookfield, WI 53005

VILLAGE OF MENOMONEE FALLS
W156 N8480 Pilgrim Road
Menomonee Falls, WI 53051

VILLAGE OF ELM GROVE
13600 Juneau Boulevard
Elm Grove, WI 53122

VILLAGE OF PEWAUKEE
235 Hickory Street
Pewaukee, WI 53072

WAUKESHA COUNTY
515 W. Moreland Boulevard
Waukesha, WI 53188

Defendants.

EXHIBIT A

## SUMMONS

THE STATE OF WISCONSIN, To each person named above as a Defendant:

You are hereby notified that the Plaintiff named above has filed a lawsuit or other legal action against you. The complaint, which is attached, states the nature and basis of the legal action.

Within 20 days of receiving this summons, you must respond with a written answer, as that term is used in Chapter 802 of the Wisconsin Statutes, to the complaint. The court may reject or disregard an answer that does not follow the requirements of the statutes. The answer must be sent or delivered to the court, whose address is 515 West Moreland Boulevard, Waukesha, Wisconsin 53188, and to the Wisconsin Institute for Law & Liberty, Plaintiff's attorneys, whose address is 1241 North Franklin Place, Milwaukee, Wisconsin 53202. You may have an attorney help or represent you.

If you do not provide a proper answer within 20 days, the court may grant judgment against you for the award of money or other legal action requested in the complaint, and you may lose your right to object to anything that is or may be incorrect in the complaint. A judgment may be enforced as provided by law. A judgment awarding money may become a lien against any real estate you own now or in the future, and may also be enforced by garnishment or seizure of property.

Dated: September 9, 2026.

Respectfully Submitted,

WISCONSIN INSTITUTE
FOR LAW & LIBERTY

*Electronically signed by Daniel P. Lennington*

Daniel P. Lennington (WI Bar No. 1088694)
Rebecca C. Furdek (WI Bar No. 1101543)
Kirsten Atanasoff (WI Bar No. 1116561)

1241 N. Franklin Place
Milwaukee, WI 53202
Phone: (414) 727-9455

Dan@will-law.org
Rebecca@will-law.org
Kirsten@will-law.org

*Attorneys for Plaintiffs*

FILED
09-09-2026
Clerk of Circuit Court
Waukesha County
2026CV001605

STATE OF WISCONSIN CIRCUIT COURT WAUKESHA COUNTY

NOCAMS MUSKEGO, INC.
PO Box 485
Muskego, WI 53150

CITIZENS DEFENDING LIBERTY
1241 North Franklin Place
Milwaukee, WI 53202

DONAVAN HAIDINGER
1320 Rosewood Court
Oconomowoc, WI 53066

Declaratory Judgment
Case Code: 30701
Case No. 26-CV

Plaintiffs,

v.

CITY OF MUSKEGO
W182 S8200 Racine Avenue
Muskego, WI 53150

CITY OF OCONOMOWOC
174 E. Wisconsin Avenue
Oconomowoc, WI 53066

CITY OF NEW BERLIN
3805 S. Casper Drive
New Berlin, WI 53151

VILLAGE OF MUKWONAGO
440 River Crest Court
Mukwonago, WI 53149

CITY OF WAUKESHA
201 Delafield Street
Waukesha, WI 53188

CITY OF DELAFIELD
500 Genesee Street
Delafield, WI 53018

VILLAGE OF HARTLAND
210 Cottonwood Avenue
Hartland, WI 53029

CITY OF BROOKFIELD
2000 N. Calhoun Road
Brookfield, WI 53005

VILLAGE OF MENOMONEE FALLS
W156 N8480 Pilgrim Road
Menomonee Falls, WI 53051

VILLAGE OF ELM GROVE
13600 Juneau Boulevard
Elm Grove, WI 53122

VILLAGE OF PEWAUKEE
235 Hickory Street
Pewaukee, WI 53072

WAUKESHA COUNTY
515 W. Moreland Boulevard
Waukesha, WI 53188

Defendants.

# COMPLAINT

Plaintiffs complain against Defendants as follows:

## INTRODUCTION

1. Flock cameras are an unblinking eye of government surveillance. They capture every passing vehicle along with surrounding pedestrians, homes, and businesses. Through AI-powered technology, the cameras catalogue past and present—and predict future movements—of everyone who travels on roads.

2. Some cameras sit outside churches, like the one outside Brooklife Church in Mukwonago. Some cameras record movements near homes, like the one over Plaintiff Haidinger's backyard fence in Oconomowoc, or the one in Pewaukee Village, capturing everyone who enters or exits a trailer park. Some cameras are installed near gun stores and Home Depots, like the ones in Waukesha. Some cameras are installed outside of the seat of government, where citizens vote, seek licenses, and otherwise petition their government, like the camera recording the parking lot at the Hartland Municipal Building.

3. Defendants have installed over 120 Flock cameras in their jurisdictions and granted police officers permission to search a surveillance network that records, tracks, and predicts the whole of Plaintiffs' physical movements. This permission—searching the whole of Plaintiffs' past, present, and future physical movements without a warrant or probable cause—violates the Fourth Amendment's right to be free from unreasonable searches.

4. Through a contract with Flock Group, Inc., images and videos from Defendants' cameras are uploaded to a searchable database (the "Flock Location Database"). The database is not only accessible to Defendants, but other agencies including, in most cases, thousands of law enforcement agencies nationwide. The Flock Location Database includes images and videos from cameras in Waukesha County, and also images and videos from over 1,500 Flock cameras in Wisconsin, and approximately 120,000 Flock cameras nationwide. Flock claims that it captures 20 billion "vehicle reads" a month.

5. Because of the ubiquity of these cameras, Plaintiffs and their members' daily movements are tracked and recorded in this database. Whether Plaintiffs or their members are going to the grocery store, work, church, court, to take their children to childcare or to school, or even to vote, to protest, or to the gun range, their movements are tracked with precision. The Flock cameras record the precise location of Plaintiffs' cars, the time of the recording, and details from each image, which includes the vehicle's make, model, color, dents, scratches, and bumper stickers. The Flock cameras also sometimes may capture and record images from inside cars, nearby homes, or pedestrians. Flock's advanced AI tools create a "Vehicle Fingerprint," "Vehicle Journey Map," and "Convoy Analysis" that catalogue past and present movements and predicts future movements. Flock also offers live video streams, which Defendants grant to other Flock customers through network-share permissions.

6. While many of these individual observations might have been made by a human observer, Flock cameras and the Flock Location Database make possible a level of surveillance that has never before existed. Now individuals moving in public can be subject to almost constant surveillance—not at a single or even a few places and not at a single or a handful of times—but at many locations and at all times. Moreover, the state can access and organize these observations almost instantaneously and with perfect recall. This is a level of surveillance that certainly did not exist at the time the Fourth Amendment was adopted and would have been impossible until a few years ago.

7. Yet this unprecedented monitoring of our physical movements currently takes place without adherence to constitutional safeguards. Employees of Defendants—primarily law enforcement officers—can search the Flock Location Database for any reason they deem necessary and without probable cause. Defendants do not require a warrant to search the Flock Location Database and neither does Flock. So while Defendants must get a warrant to search Google location history, Apple location history, social media location history, and cell-site location information, Defendants permit their employees (and law enforcement agencies nationwide) to get similar information—and in some cases better and more accurate location history—from the Flock Location Database.

8. With law enforcement's use of these cameras increasing at a rapid-fire pace, the horror stories they have spawned have just begun to come to light. While dozens of examples have emerged nationwide about the system being used for

stalking, false positives, and government retaliation against critical citizens, similar themes are popping up right here in Waukesha County. A man who brought a citizen complaint against an officer alleges that same officer began monitoring him via Flock cameras in retaliation for exercising his First Amendment rights.[1] On I-94 in Brookfield, a Milwaukee woman was wrongfully stopped at gunpoint after a Flock camera flagged her car per an outdated MPD alert.[2]

9. The Fourth Amendment was designed "to place obstacles in the way of a too permeating police surveillance." *United States v. Di Re*, 332 U.S. 581, 595 (1948). Police officers, therefore, must obtain a warrant before invading an individual's reasonable expectation of privacy.

10. Recent U.S. Supreme Court cases have confirmed that an individual has a reasonable expectation of privacy in the "whole of their physical movements," "even though the movements occurred in public." *Chatrie v. United States*, 146 S. Ct. 2193, 2206–07 (2026) (collecting cases). The Court has required warrants for GPS tracking on public roads, the acquisition of "cell-site location information," and Google location history, even though that information tracks a person's physical movements in public and on public roads, and even though the information is held by a third party. *Id.*

[1] Ben Jordan, Lawsuit: Waukesha County Man Gets "Flocked" by Sheriff's Dept. After Filing Complaint Against Deputy, TMJ4 News (Aug. 28, 2026) available at https://www.tmj4.com/news/local-news/in-your-community/waukesha-county/lawsuit-waukesha-county-man-gets-flocked-by-sheriffs-dept-after-filing-complaint-against-deputy.

[2] Brendyn Jones, Milwaukee Woman Retains Attorney After Flock Camera Database Error Leads to Gunpoint Stop on I-94, TMJ4 News (Aug. 25, 2026) available at https://www.tmj4.com/news/local-news/in-your-community/milwaukee-county/milwaukee-woman-retains-attorney-after-flock-camera-database-error-leads-to-gunpoint-stop-on-i-94.

Flock is just another extension of this movement-tracking technology, and yet a "new technology should not transform what individuals had reasonably thought they could withhold from the Government." *Id.*

11. Under current U.S. Supreme Court precedent, when law enforcement searches a "database of physical location information," that is a "search" under the Fourth Amendment. *Id.* at 2217. And when a "search" occurs, a warrant is required or a recognized warrant exception.

12. Because the Flock Location Database is a database of individuals' physical location information, and in some cases even more precise than databases and information previously considered by the Supreme Court, the Fourth Amendment demands a warrant based on probable cause before any search (or a valid exception).

13. Plaintiffs and their members—Wisconsin taxpayers whose taxes support Defendants' unconstitutional practices of wrongfully surveilling them—ask this Court to declare Defendants' access of the Flock Location Database without a warrant (or a valid warrant exception) unconstitutional.

**PARTIES, JURISDICTION, & VENUE**

14. Plaintiff NoCams Muskego, Inc. is a Wisconsin nonstock, nonprofit corporation organized under Chapter 181. Its purpose is to promote the common good and general welfare of the people of Muskego and Wisconsin by educating the public about mass surveillance and advocating for limits on warrantless tracking. NoCams Muskego has recognized a class of supporters, called Members of NoCams Muskego,

who have been tracked, and continue to be tracked, in their daily movements without a warrant by cameras owned, operated, and/or searched by Defendants. Those supporters include taxpayers whose funds support Muskego and other jurisdictions in Waukesha County, including Defendants. NoCams Muskego brings this action on behalf of itself and its supporters.

15. Plaintiff Citizens Defending Liberty (CDL) is an unincorporated association of taxpayers organized under the laws of the State of Wisconsin. CDL members live, work, travel, and pay taxes throughout Wisconsin, including Defendants' jurisdictions. Members of CDL have had, and continue to have, their daily movements tracked by cameras owned, operated, and/or searched by Defendants.

16. Plaintiff Donavan Haidinger is an individual who resides, lives, and pays taxes in Oconomowoc. Oconomowoc installed a camera right at the entrance of his subdivision. It is visible from his backyard. Because of the location of his home, Oconomowoc's cameras make a record and take a photograph virtually every time he leaves his neighborhood or returns home.

17. Defendants are all Wisconsin municipalities—or in the case of Waukesha County, a county—organized under the laws of the State of Wisconsin. All Defendants receive taxes from Plaintiffs either through direct taxation, fees, licenses, or shared revenue payments.

18. Plaintiffs and their members are all citizens whose Fourth Amendment rights are violated by the warrantless searches of the Flock Location Database.

Plaintiffs and their members or supporters are also Wisconsin taxpayers whose taxes support Defendants' operations, including Defendants' purchase, use, and operation of Flock cameras and the unconstitutional searches of the Flock Location Database. For purposes of this Complaint, "Plaintiffs" refers to the Plaintiffs and their members.

19. In addition to the Fourth Amendment violations, "in Wisconsin, taxpayers may challenge the illegal expenditures of public funds." *Rabiebna v. Higher Educ. Aids Bd.*, 2026 WI 20, ¶ 18. This is because "[a]ny illegal expenditure of public funds . . . results either in the governmental unit having less money to spend for legitimate governmental objectives, or in the levy of additional taxes to make up for the loss resulting from the expenditure." *Id.* (quoting *S.D. Realty Co. v. Sewerage Comm'n of City of Milwaukee*, 15 Wis. 2d 15, 21–23 (1961)).

20. This is an action for declaratory and injunctive relief under Wis. Stat. §§ 806.04 and 813.01. Plaintiffs also assert a claim under 42 U.S.C. § 1983.

21. This Court has jurisdiction pursuant to Wis. Stat. §§ 753.03 and 806.04.

22. This Court has venue pursuant to Wis. Stat. § 801.50(2)(a) and (c).

## FACTS

### How Flock Cameras Work

23. Flock is a private company that sells and rents cameras and other equipment and cloud-based software to law enforcement agencies, local governments, homeowners' associations, and other private customers. Home Depot and Fleet Farm, for example, have Flock cameras in some of their parking lots, including in Waukesha County.

24. Flock cameras are compact, solar-powered, and typically installed on poles on roadsides, highways, intersections, and parking lots.

25. Flock cameras record images of all vehicles, capturing images that depict the vehicle, including its license plate, make, model, color, and even cosmetic features such as dents, scratches, bumper stickers, or roof racks.

26. Flock uploads these images to a searchable database. Flock then uses artificial intelligence to convert the image into easily searchable data that Flock markets as a "Vehicle Fingerprint."

27. Flock customers—whether public or private—can then query the database in a variety of ways. Customers can simply search for a full or partial license plate number. Customers can also search for the features of a car, that is, the "Vehicle Fingerprint," through an advanced freeform text prompt (like "white pickup with ladder rack"). And customers can proactively place a vehicle in a "hotlist," and then whenever a vehicle is found, the customer is alerted.

28. After a customer determines what to search, the customer then determines where to search. A customer can search much more than their own cameras. Flock's software allows a customer to search in any region in the United States: town, village, city, county, state, the entire country, or any combination of the preceding locations (such as southeastern Wisconsin and northern Illinois). Customers can obtain images and videos, including in some cases live video.

29. In response to a search of the database, Flock provides the requested information including an image, location, time, date, and other relevant information.

30. Flock also offers tools that go beyond a single search. Customers can identify vehicles that repeatedly appear at the same location, reconstruct patterns of movement across cameras, and generate a "Vehicle Journey Map" of prior hits. Using "Convoy Analysis," customers can identify other vehicles that frequently appear near a target vehicle. Using "Multi-Geo Search," customers can generate a list of vehicles that appeared at two or more specified locations during a chosen period. Flock also offers "Real-Time Routing," which uses prior camera hits to estimate a vehicle's direction of travel and possible future path. Other tools include visual search from an uploaded photograph, detection of the same plate on different vehicles, and alerts when a vehicle of interest is seen in multiple states.

**Defendants' Flock Cameras**

31. This is not a case where Defendants search a third party data base collected and maintained for other purposes. Each Defendant has a contract with Flock and has installed cameras to monitor vehicles and Plaintiffs' movements in their respective jurisdictions. Almost all Flock cameras exist and are placed to serve the investigational needs of Defendants and other state agencies.

32. Each Defendant has a contract with Flock and has installed cameras to monitor vehicles and Plaintiffs' movements in their respective jurisdictions.

33. Each Defendant allows its officers to query the Flock Location Database and use the other Flock tools without a warrant or probable cause.

34. Upon information and belief, these are the current camera counts for each Defendant municipality:

City of Muskego: 9
City of Oconomowoc: 11[3]
City of New Berlin: 14
Village of Mukwonago: 7
City of Waukesha: 32[4]
City of Delafield: 9[5]
Village of Hartland: 3
City of Brookfield: 12
Village of Menomonee Falls: 15
Village of Elm Grove: 6
Village of Pewaukee: 5

35. Upon information and belief, Waukesha County has at least two cameras on I-94. As the contracting law enforcement agency for the City of Pewaukee, the County also likely operates the cameras in that jurisdiction. Moreover, Waukesha County likely operates three cameras in the Village of Sussex, which has no local police department but contracts with the County, two cameras in the Village of Waukesha, and perhaps other cameras in rural Waukesha County.

36. Defendants have placed cameras in a variety of sensitive places throughout Waukesha County, including in front of a polling location (Village of Hartland), in front of St. Michael's Anglican Church, 2565 N. Genesee Street, Delafield, and in front of homes (Village of Pewaukee and City of Oconomowoc). These cameras all record traffic going in and out of these locations.

37. Oconomowoc Area School District, which is not a defendant, owns four additional Flock cameras around Oconomowoc High School: two in the north parking

---

[3] Four Flock Cameras are within the City of Oconomowoc but operated by the Oconomowoc Area School District.

[4] Two cameras within Waukesha's jurisdiction are at a Home Depot.

[5] Two cameras within Delafield's jurisdiction are at a Home Depot.

lot, one on Bolson Drive, and one by the administration building. Those cameras feed a Flock network that, according to public records, was searched by Oconomowoc Police, the Waukesha County Communications Center, and OASD itself.

38. The pervasiveness of the Flock Cameras makes them more accurate than cell-site location data and Google location history in many places. For example, a person who lives in southeast Waukesha off Sunset Drive who wanted to go to Meijer, just 3.4 miles down Sunset Drive, would be photographed or videotaped by approximately 5 cameras each way. On average, that's precision tracking just about every minute, both ways, with much more information than an officer could get from Google with a warrant. But with Flock, Defendants do not get warrants. As Flock expands and Defendants continue to add cameras, Waukesha residents will live inside a veritable panopticon.

**Defendants' Flock Policies**

39. Defendants allow their employees (typically police officers) to search the Flock Location Database and use Flock's advanced tools without obtaining a warrant. Defendants also do not require probable cause before searching the Flock Location Database or to use Flock's advanced tools. Below are representative examples from some of the Defendants. Upon information and belief, the remaining Defendants either have similar policies or no policy at all.

40. Defendant City of Muskego's policy directs officers to "Enter the incident report number in the search reason. If no incident report is associated with the search

enter the primary reason you are searching for the plate." The policy does not require probable cause or a warrant.

41. Defendant Village of Menomonee Falls's policy provides that searches of "Flock system data are limited to legitimate law enforcement purposes." The policy does not require probable cause or a warrant.

42. Defendant City of Delafield requires that "ALPR shall only be used for official and legitimate law enforcement business." On or about August 18, 2026, Delafield disabled Flock nationwide search, launched a transparency portal, required all officers to verify automated license plate reader hits with a secondary source, and mandated internal audit reviews. Delafield's policy still contains this provision: "Reasonable suspicion or probable cause is not necessary before using an ALPR."

43. Defendant Village of Hartland's Flock policy provides that authorized employees "may access stored ALPR data upon a reasonable belief that the data may be related to or useful as part of a specific official action or investigation." Use of the system is restricted to "official and legitimate law enforcement purposes." The policy does not require probable cause or a warrant.

44. Defendant Village of Pewaukee's Flock policy provides that "[d]epartment personnel must have an articulable law enforcement reason to access and/or perform any query in the Flock system," and that the "Search Reason" will include "why the search was conducted." The policy does not require probable cause or a warrant.

45. Defendant City of Oconomowoc's policy provides that "[s]earches for Flock system data are limited to legitimate law enforcement purposes" and that the Flock system "[c]aptures images of license plates and vehicles within and outside of (shared data) Oconomowoc, WI." The policy does not require probable cause or a warrant.

46. Defendant Village of Elm Grove does not have a policy governing Flock cameras or ALPR use. Without a written policy, Elm Grove has no warrant requirement, no probable-cause standard, and no other written limits on querying the Flock Location Database.

**Defendants' Flock Usage**

47. Each Defendant maintains organizational audit logs (each Defendants' own use), network audit logs (non-Defendants' use of cameras in Defendants' networks), and event logs (documenting, among other things, Defendants' grant of access to cameras). Below are representative examples of Flock usage by some of the Defendants based on their responses to recent public records requests:

*City of Muskego*

48. Between July 25 and August 24, 2026, fourteen City of Muskego officers searched the Flock Location Database 315 times. Roughly a third of those searches were of Muskego's own network. Over half of the searches were regional searches, such as southeast Wisconsin. And 41 times during that period, Muskego officers searched Flock's nationwide database.

49. Other agencies ran searches on the Flock Location Database that included the City of Muskego cameras over 900,000 times during the same period. These law enforcement agencies included the California Highway Patrol (45,537 searches), the Louisville Metro Police Department (14,434 searches), the Palm Beach County Sheriff's Office (11,274 searches), and the Federal Bureau of Investigation (21,057 searches).

50. Many of the reasons for searching Muskego's cameras were vague. Over 100,000 searches were for "investigation" or similar generic reasons. Nearly 50,000 searches on Muskego's system were for "other." Over 20,000 searches were for "not applicable."

51. During that same period, Muskego's Flock event log records 27 new network-share grants of Muskego WI PD data (search, alerts, and/or video), 25 of which went to out-of-state agencies. Seven agencies also got video permissions. Those seven include Grosse Ile, Michigan; Orleans County, New York; Halifax County, North Carolina; Bedford County, Tennessee; Athalia, Ohio; West Bend, Wisconsin; and Ocean Springs, Mississippi. Search/Alerts went to Texas DPS, Kentucky State Police, and the National Park Service's Natchez Trace Parkway unit, among others. The City also created an Axon API integration into Flock.

*Village of Menomonee Falls*

52. Between May 29 and August 26, 2026, over forty Village of Menomonee Falls officers searched the Flock Location Database 914 times. About 14% of those searches queried a single network (probably Menomonee Falls' own cameras). About

39% queried roughly 2,500 to 2,800 networks. And 43 times during that period, Menomonee Falls officers searched Flock's nationwide database. Officers also ran 40 "freeform" searches using Flock's plain-language AI search tool across license-plate images and video.

53. In July 2026 alone, other law enforcement agencies ran searches on the Flock Location Database that included the Village of Menomonee Falls cameras about 1.1 million times. Those searches came from more than 3,000 agencies. The most frequent searchers included the Houston Police Department (72,740 searches), the California Highway Patrol (54,965), the Federal Bureau of Investigation (20,828), the Louisville Metro Police Department (16,506), and the Texas Department of Public Safety (15,369). Many of the July 2026 searches of Menomonee Falls cameras used generic or non-investigative reasons. More than 200,000 searches were logged as an "Investigation." More than 41,000 were logged as a "Traffic Infraction." "Other – Not Applicable" was used 20,123 times.

54. Between May 31 and August 28, 2025, Menomonee Falls's Flock event log records 95 new network-share grants of Menomonee Falls WI PD data to 93 agencies (62 of them out of state). Almost all were Search only. Recipients included the Texas Department of Public Safety, the National Park Service's Natchez Trace Parkway unit, the New England State Police Information Network, Humble ISD Police in Texas, and campus police at the University of South Florida–St. Petersburg, the University of Missouri, and Northeast State Community College in Tennessee, among others. The Village also created a Peregrine API integration into Flock.

55. Menomonee Falls has also contracted with Flock for a "Drone as First Responder" system, including an Alpha drone, a battery-swapping dock, and Flock911, which "enables users to access live 911 calls directly within the FlockOS software." The Village agreed to pay $375,000 over 48 months. Flock "maintains ownership of all the Flock Hardware," and a special term of the contract provides that Flock "shall retain all flight data stored within the Aerodome system for one (1) year."

*City of Delafield*

56. Between May 28 and August 24, 2026, fourteen City of Delafield officers searched the Flock Location Database 316 times. About 11% of those searches queried a single network (likely, Delafield's own cameras). About half of the searches queried roughly regional networks, and 17 times, Delafield officers searched Flock's nationwide database.

57. Between May 26 and August 26, 2026, other law enforcement agencies ran searches on the Flock Location Database that included the City of Delafield cameras about 1.2 million times. Those searches came from more than 3,000 agencies. The most frequent searchers included the Texas Department of Public Safety (39,545 searches), the Houston Police Department (25,647), the Dallas Police Department (17,775), the Coweta County, Georgia, Sheriff's Office (15,213), and the Joliet, Illinois, Police Department (12,642).

58. Many of the May–August 2026 searches of Delafield cameras used generic reasons. "Traffic Infraction" was used over 120,000 times. "Other" reasons

were used about 65,000 times. Reasons containing the word "Investigation" appeared over 160,000 times.

59. On August 18, 2026, Delafield disabled nationwide Flock search. Chief Nyren told officers that national search was turned off because it is reciprocal with every agency in that nationwide pool, and the department launched a public transparency portal. Delafield's written ALPR policy was not amended to bar nationwide search or to limit sharing to Wisconsin agencies. The current policy still allows Delafield Flock data to be shared with other law enforcement agencies that contract with Flock Safety.

60. Delafield's Flock event log records 60 "View Live Stream" events between July 31 and August 31, 2026. Forty-two of those views were of camera C#002, Golf Road at Highway 83 westbound. Fifteen were of camera C#006, Hillside Drive at Highway 83 westbound. Other live views included a PTZ (pan, tilt, zoom) camera and a camera at Sauk Street and Valley Drive. Eight Delafield users opened those live streams.

61. In the same event log, Delafield created network shares of "Delafield WI PD (Live Video)" with Search, Alerts, VMS Go-Live, and VMS Download permissions to the Lac Courte Oreilles Tribal Police and the Mount Pleasant Police Department.

*Village of Hartland*

62. Between June 4 and August 25, 2026, eleven Village of Hartland officers searched the Flock Location Database 157 times. About 60% of those searches queried a single network (Hartland's own cameras most likely). About a quarter

queried roughly 120 to 250 networks. None of those searches queried Flock's nationwide database.

63. Between June 29 and July 29, 2026, other law enforcement agencies searched the Flock Location Database, including the Village of Hartland cameras nearly 800,000 times. Those searches came from over 3,000 agencies. The most frequent searchers included the California Highway Patrol, the Federal Bureau of Investigation, the Louisville Metro Police Department, the Texas Department of Public Safety, and the Hillsborough County Sheriff's Office.

64. Many of the July 2026 searches of Hartland cameras used generic or non-investigative reasons. More than 100,000 searches were for "investigation" or similar generic reasons. More than 31,000 were logged as a "Traffic Infraction." "Other – Not Applicable" was used about 20,000 times.

*Village of Pewaukee*

65. Between August 3 and September 1, 2026, twelve Village of Pewaukee officers searched the Flock Location Database 209 times. About 38% of those searches queried a single network (probably Pewaukee's own cameras). About 28% queried roughly 50 to 260 networks. And 46 times during that period, Pewaukee officers searched Flock's nationwide database of 5,000 or more networks.

66. Other agencies ran searches on the Flock Location Database that included the Village of Pewaukee cameras about 340,000 times during the same period. Those searches came from over 2,800 agencies. The most frequent searchers included the Texas Department of Public Safety (8,708 searches), the Houston Police

Department (6,613), the Dallas Police Department (4,902), the Joliet Police Department (3,865), and the Hillsborough County Sheriff's Office (3,848).

67. Many of the reasons for searching Pewaukee's cameras were vague. About 50,000 searches were for "investigation" or similar generic reasons. More than 11,000 were logged as a "Traffic Infraction."

*City of Oconomowoc*

68. Between May 25 and August 24, 2026, eleven City of Oconomowoc officers searched the Flock Location Database about 500 times. Those searches frequently reached far beyond Oconomowoc's own cameras. Across those monthly organizational audits, the average search queried roughly 200 to 460 Flock networks, and at least one search queried more than 6,000 networks.

69. Other agencies ran searches on the Flock Location Database that included the City of Oconomowoc cameras about 50,000 times between July 25 and August 24, 2026 (from 207 agencies), and about 64,000 times between June 25 and July 25, 2026 (from 223 agencies). Between May 25 and June 24, 2026, outsider searches that included Oconomowoc's cameras exceeded 400,000. Frequent searchers in the June–August window included the Milwaukee Police Department, the Bloomington, Illinois Police Department, the West Allis Police Department, the Addison, Illinois Police Department, and the Brown County Sheriff's Office. Many reasons were generic: "Other – Investigation" alone was used thousands of times each month.

*Village of Elm Grove*

70. Officers in the Village of Elm Grove searched Flock over 250 times in June, July, and August 2026, including 41 searches for "animal offenses." Outside law enforcement agencies searched Elm Grove's cameras about 950,000 times in August 2026, over 1 million times in July 2026, and over 1 million times in June 2026.

71. The remaining Defendants have contracts with Flock, operate Flock cameras, and search the Flock Location Database without a warrant or probable cause.

**Flock Abuses & Mistakes**

72. Because of the lack of a warrant requirement, Flock cameras have been abused nationwide by law enforcement. Just in Wisconsin, there have been several incidents:

a. Former MPD Officer Josue Ayala was charged in February 2026 with misconduct after allegedly running Flock lookups on a person he was dating 124 times and that person's ex 55 times, nearly 200 searches in two months, often logging the reason as "investigation."[6]

b. The Milwaukee detective assigned to investigate the Ayala case was charged for doing the same thing. Internal Affairs Det. Tehrangi Chapman was charged in July 2026 with misconduct in public office and illegal GPS tracking after allegedly using Flock about 20 times over a year to locate two people and secretly putting a GPS tracker on one car. He had been assigned in December 2025 to investigate Ayala's Flock misuse. Chapman logged some improper searches as "training" or "test."[7]

---

[6] Milwaukee Police Updates Use of Flock License Plate Reader System After Officer Charged with Misconduct, Wis. Pub. Radio (May 26, 2026), https://www.wpr.org/news/milwaukee-police-flock-license-plate-reader-system-officer-misconduct.

[7] Press Release, ACLU of Wis., ACLU of Wisconsin Responds to Accusations of Another Milwaukee Police Officer Misusing Flock Surveillance Technology (July 9, 2026), https://www.aclu-wi.org/press-releases/aclu-of-wisconsin-responds-to-accusations-of-another-milwaukee-police-officer-misusing-flock-surveillance-technology/.

c. A Menasha officer was convicted and jailed for using Flock to track an ex-girlfriend. Cristian Morales was charged with felony misconduct for five off-duty Flock searches in October 2025 that were not tied to an investigation. In mid-August 2026, he was sentenced to jail plus probation after a judge rejected a lighter joint recommendation.[8]

d. Navy veteran Napoleon Jones alleges that after he lawfully filmed a Waukesha County Sheriff's deputy's traffic stop and filed a citizen complaint, deputies used Flock to run multiple searches of his vehicle—including on dates unrelated to the stop—and that county open-records materials included a May 30, 2025 Flock ALPR photograph of his car, which he contends was retaliation rather than a legitimate law-enforcement purpose.[9]

73. Some Flock mistakes have caused significant harm. On August 6, 2026, for example, Brookfield officers stopped a vehicle on Interstate 94 after a Flock alert flagged it as tied to a Milwaukee homicide and an armed suspect. Officers conducted a high-risk stop with guns drawn. The occupants were not involved; Milwaukee police had already cleared the vehicle but had failed to remove it from the Flock system. Milwaukee later called the episode human error rather than a camera misread, and Brookfield let the occupants go after confirming Milwaukee no longer wanted the car or the people inside.[10]

---

[8] Duke Behnke, Appleton Asks Flock Safety to Disable Surveillance Cameras by June 30, Appleton Post-Crescent (June 25, 2026), https://www.postcrescent.com/story/news/local/2026/06/25/appleton-asks-flock-safety-to-disable-surveillance-cameras-by-june-30/90665736007/.

[9] See Am. Compl., *Jones v. Shayhorn*, No. 25-CV-01886 (E.D. Wis. July 31, 2026), ECF No. 39 ¶¶ 42–47, 85–95, available here: https://storage.courtlistener.com/recap/gov.uscourts.wied.114502/gov.uscourts.wied.114502.39.0_1.pdf.

[10] Bridget Fogarty, Brookfield Chief Defends Officers in Flock-Related Freeway Traffic Stop, Milwaukee J. Sentinel (Aug. 7, 2026), https://www.jsonline.com/story/communities/west/2026/08/07/brookfield-milwaukee-police-clarify-flock-mix-up-involving-i-94-stop/91212700007/.

**The Flock Location Database & Fourth Amendment**

74. In June 2026, the Supreme Court held in *Chatrie v. United States* that acquiring Google Location History is a Fourth Amendment search, which generally requires a warrant or applicable exception.

75. In practice, the Flock Location Database provides even more information than Google Location History and is more precise. While Google's data can track a person's movements within 20 meters, *Chatrie,* 146 S. Ct. at 2208, the Flock Location Database provides an image of the exact location of a vehicle. That image also contains information about the vehicle, such as make, model, color, bumper stickers, dents, scratches, roof racks, and even potentially occupants of the vehicle. Google Location History provides no such detail.

76. While Google's data can identify an individual's location "every two minutes or so," *Chatrie,* 146 S.Ct. at 2202, the Flock Location Database can match that precision where cameras are placed along a common route. For example, a person driving from the Delafield Home Depot to the Delafield Best Buy—a route that is about two miles and takes about 10 minutes—an individual's location would be captured by the Flock Location Database about nine times. That's about one precise location photograph every minute, much more revealing than Google Location History.

77. Based on the principles and reasoning in *Chatrie*, Defendants' search of the Flock Location Database is a search that requires a warrant, or applicable warrant exception, under the Fourth Amendment.

**Count 1**

**VIOLATION OF THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION**

78. Plaintiffs reallege and incorporate all preceding allegations of the Complaint.

79. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.

80. The "basic purpose" of that Amendment is "to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Carpenter v. United States*, 585 U.S. 296, 303 (2018).

81. "[I]ndividuals have a reasonable expectation of privacy in the whole of their physical movements." *Id.*, 585 U.S. at 310.

82. That expectation exists even for movements on public roads. Before digital tracking, "society's expectation ha[d] been that law enforcement agents and others would not—and indeed, in the main, simply could not—secretly monitor and catalogue every single movement of an individual's car for a very long period." *United States v. Jones*, 565 U.S. 400, 430 (2012) (Alito, J., concurring), quoted in *Carpenter*, 585 U.S. at 310.

83. When Defendants acquire information about an individual's physical movements from a database, Defendants invade that reasonable expectation of privacy and "thus conduct a search." *Chatrie*, 146 S. Ct. at 2206.

84. *Chatrie* holds that the Fourth Amendment applies "when officials tap into" a third party's "database of physical location information." *Id.* at 2217 (quoting

*Carpenter*, 585 U.S. at 320, and considering the Google location history database). Querying the Flock Location Database is that search. It is not an officer glancing at a plate on a public street.

85. Defendants' use of the Flock Location Database is a "search" "even though for only a limited period of time and even though via a third-party tech company." *Id.*

86. Plaintiffs and other Wisconsin citizens have a reasonable expectation of privacy in their movements that are captured by the network of Flock cameras and the data available in the Flock Location Database.

87. When Defendants query the Flock Location Database, Defendants conduct a search under the Fourth Amendment.

88. It does not matter that any one camera captures only a snapshot. *Chatrie* rejected a grace period for short windows of location data: police "conduct a search[ ] when they acquire that information, even though for only a limited period of time and even though via a third-party tech company." *Id.* at 2206. "The durational bounds on the data actually acquired do little to address the Fourth Amendment's concern about a too permeating police surveillance." *Id.* at 2210 (quotation omitted).

89. When Defendants query the Flock Location Database without probable cause and without a warrant (or a valid warrant exception), Defendants violate the Fourth Amendment.

90. As taxpayers, Plaintiffs may challenge Defendants' illegal Flock practices.

91. Plaintiffs, as Wisconsin citizens who travel in and around Waukesha County and have their location unconstitutionally tracked by Flock cameras in Defendants' jurisdictions, may challenge Defendants' illegal Flock practices.

**Count 2**
**VIOLATION OF THE CIVIL RIGHTS ACT OF 1871**
**42 U.S.C. § 1983**

92. Plaintiffs reallege and incorporate all preceding allegations of the Complaint.

93. At all relevant times, Defendants acted under color of state law. 42 U.S.C. § 1983 provides a cause of action against any person who, under color of state law, deprives another of rights secured by the Constitution.

94. Querying the Flock Location Database is a search under the Fourth Amendment. *Chatrie*, 146 S. Ct. at 2206; *Carpenter*, 585 U.S. at 310. A warrant is required unless a valid exception to the warrant requirement applies.

95. Defendants' practices and policies authorize their officers and employees to access the Flock Location Database without a warrant and without any valid warrant exception. Those practices and policies are official municipal policy. They deprive Plaintiffs of the right to be free from unreasonable searches, in violation of the Fourth Amendment and 42 U.S.C. § 1983.

**REQUEST FOR RELIEF**

Plaintiffs therefore request the following relief:

A. A declaration that Defendants' querying of the Flock Location Database constitutes a search under the Fourth Amendment;

B. A declaration that querying the Flock Location Database without a warrant, or an applicable warrant exception, violates the Fourth Amendment.

C. A permanent injunction enjoining Defendants from querying the Flock Location Database without a warrant or a valid warrant exception.

D. An award of appropriate damages.

E. An award of costs, attorney's fees under 42 U.S.C. § 1988, and any such other relief as the Court deems appropriate.

Dated: September 9, 2026.

Respectfully Submitted,

WISCONSIN INSTITUTE FOR
LAW & LIBERTY

*Electronically signed by Daniel P. Lennington*

Daniel P. Lennington (WI Bar No. 1088694)
Rebecca C. Furdek (WI Bar No. 1101543)
Kirsten Atanasoff (WI Bar No. 1116561)

1241 N. Franklin Place
Milwaukee, WI 53202
Phone: (414) 727-9455

Dan@will-law.org
Rebecca@will-law.org
Kirsten@will-law.org

*Attorneys for Plaintiffs*

FILED
09-18-2026
Clerk of Circuit Court
Waukesha County
2026CV001605

STATE OF WISCONSIN CIRCUIT COURT WAUKESHA COUNTY

NOCAMS MUSKEGO, INC.
PO Box 485
Muskego, WI 53150

CITIZENS DEFENDING LIBERTY
1241 North Franklin Place
Milwaukee, WI 53202

DONAVAN HAIDINGER
1320 Rosewood Court
Oconomowoc, WI 53066

Case No. 26-CV-1605

Plaintiffs,

v.

CITY OF MUSKEGO
W182 S8200 Racine Avenue
Muskego, WI 53150

CITY OF OCONOMOWOC
174 E. Wisconsin Avenue
Oconomowoc, WI 53066

CITY OF NEW BERLIN
3805 S. Casper Drive
New Berlin, WI 53151

VILLAGE OF MUKWONAGO
440 River Crest Court
Mukwonago, WI 53149

CITY OF WAUKESHA
201 Delafield Street
Waukesha, WI 53188

CITY OF DELAFIELD
500 Genesee Street
Delafield, WI 53018

VILLAGE OF HARTLAND
210 Cottonwood Avenue
Hartland, WI 53029

CITY OF BROOKFIELD
2000 N. Calhoun Road
Brookfield, WI 53005

VILLAGE OF MENOMONEE FALLS
W156 N8480 Pilgrim Road
Menomonee Falls, WI 53051

VILLAGE OF ELM GROVE
13600 Juneau Boulevard
Elm Grove, WI 53122

VILLAGE OF PEWAUKEE
235 Hickory Street
Pewaukee, WI 53072

WAUKESHA COUNTY
515 W. Moreland Boulevard
Waukesha, WI 53188

Defendants.

## DECLARATION OF SAMUEL C. HALL REGARDING SERVICE

I, SAMUEL C. HALL, JR. counsel for all Defendants in this action, make this declaration related to service of process:

1. Plaintiffs have electronically served every document filed in this case via email to me shortly after they were filed: (1) the summons and complaint (Dkt. 13); (2) the electronic filing notices (Dkts. 1–12).

2. I have agreed that Defendants would accept electronic service as of September 18, 2026, consistent with Wis. Stat. § 801.18(5)(d) and (6)(b).

I declare under penalty of false swearing under the law of Wisconsin that the foregoing is true and correct. Signed on the 18th day of September, 2026, at Milwaukee, Wisconsin.

Printed Name: Samuel C. Hall

Signature:
*Electronically Signed by Samuel C. Hall*