**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**

---

NOCAMS MUSKEGO, INC.,
CITIZENS DEFENDING LIBERTY,
and DONAVAN HAIDINGER,

Plaintiffs,

Case No. 26-CV-1863

v.

CITY OF MUSKEGO, CITY OF OCONOMOWOC,
CITY OF NEW BERLIN, VILLAGE OF MUKWONAGO,
CITY OF WAUKESHA, CITY OF DELAFIELD,
VILLAGE OF HARTLAND, CITY OF BROOKFIELD,
VILLAGE OF MENOMONEE FALLS, VILLAGE OF
ELM GROVE, VILLAGE OF PEWAUKEE and
WAUKESHA COUNTY,

Defendants.

---

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

---

The Defendants, by their attorneys Crivello, Nichols & Hall, S.C., submit this brief in support of their motion to dismiss Plaintiffs' Complaint under Fed. R. Civ. P. 12(b)(6).

## INTRODUCTION

Plaintiffs challenge Defendants' policies allowing officers to conduct warrantless "Flock Location Database" searches. Plaintiffs' claims fail as a matter of law because an inquiry of such a database is not a "search" for the purposes of the Fourth Amendment. In addition, Plaintiffs' relief, if any, is available through 42 U.S.C. § 1983 and not directly under the Fourth Amendment. Finally, Plaintiffs have failed to allege facts that confer them standing to challenge Defendants' policies and actions.

## ARGUMENT

### I. STANDARD OF REVIEW

#### a. Motion To Dismiss Under Fed. R. Civ. P. 12(b)(6).

To analyze the sufficiency of Plaintiffs' complaint under Fed. R. Civ. P. 12(b)(6), the pleading should be construed in the light most favorable to Plaintiffs, with all well pled facts of the complaint accepted as true and all reasonable inferences drawn in Plaintiffs' favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

However, the Defendants' Motion should be granted if the Court finds that the pleading lacks a factual context sufficient to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 663–64 (2009) (holding that *Twombly*'s plausibility standard applies to all civil actions). "Factual allegations must be enough to raise a right to relief above the speculative level." *Iqbal*, 556 U.S. at 677. "Importantly, the Supreme Court's decisions in *Twombly* and *Iqbal* ushered in a requirement that civil pleadings demonstrate some merit or plausibility in complaint allegations to protect defendants from having to undergo costly discovery unless a substantial case is brought against them." *United States v. Vaughn*, 722 F.3d 918, 926 (7th Cir. 2013); *see also Twombly*, 550 U.S. at 557 (holding that a complaint must contain "allegations plausibly suggesting (not merely consistent with)" an entitlement to relief).

If the allegations of a complaint give rise to an "'obvious alternative [legitimate] explanation'" for the conduct which is allegedly wrongful, the claim fails to meet the plausibility requirement and must be dismissed. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). While a court should accept "the well-pleaded facts in the complaint as true" when analyzing a motion to dismiss, "legal conclusions and conclusory allegations merely reciting the elements of

the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). "The required level of factual specificity rises with the complexity of the claim . . . ." *Id.* at 616–17.

**b. Motion To Dismiss Under Fed. R. Civ. P. 12(b)(1).**

A party may also move to dismiss an action for lack of a justiciable controversy under Federal Rule of Civil Procedure 12(b)(1). *See Retired Chicago Police Ass'n v. City of Chicago*, 76 F.3d 856, 862 (7th Cir. 1996). At the pleading stage, courts review justiciability based on the well-pled allegations in the complaint under the Fed. R. 12(b)(6) standard. *See Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1007-08 (7th Cir. 2021). The plaintiff carries the burden of establishing standing. *Id.*

## II. PLAINTIFFS DO NOT HAVE A DIRECT CAUSE OF ACTION UNDER THE FOURTH AMENDMENT

Plaintiffs allege two causes of action. First, Plaintiffs allege a "violation of the Fourth Amendment of the United States Constitution." (Dkt. 1-1, ¶¶ 78-91). Second, Plaintiffs allege a "violation of the Civil Rights Act of 1871 42 U.S.C. § 1983" predicated on an alleged "violation of the Fourth Amendment." (*Id.*, ¶¶ 92-95). Plaintiffs' first cause of action fails as a matter of law because there is no direct cause of action under the Fourth Amendment; Plaintiffs' redress, if any exists, is through 42 U.S.C. § 1983.

There is simply "no need to imply a direct cause of action under the Fourteenth Amendment when Congress has provided a means to vindicate those rights in 42 U.S.C. § 1983." *Baxter by Baxter v. Vigo Cty. Sch. Corp.*, 26 F.3d 728, 732 n.3 (7th Cir. 1994) (superseded by statute on unrelated grounds). Plaintiffs cannot avoid the requirements applicable to actions under § 1983 "by the facile expedient … of simply omitting any reference to that statute and suing directly under the Constitution." *Newman v. State of Indiana*, 129 F.3d 937, 942 (7th Cir.

1997). Thus, federal district courts within this circuit have repeatedly stated that, when § 1983 is available as a remedy, "[o]ne's constitutional rights … must be vindicated through the statutory remedy provided by § 1983." *Norflo Holding Corp., Inc. v. City of Chicago*, No. 00 C 6208, 2002 WL 453605, at *1 n.1 (N.D. Ill. March 25, 2002). "Section 1983 provides a cause of action against municipalities and municipal employees, and the availability of this statutory remedy precludes direct claims under the Constitution." *Allen v. City of Chicago*, 828 F. Supp. 543, 563 (N.D. Ill. 1993); *see also Durr v. Illinois*, No. 24-3149, 2025 WL 1009191 (7th Cir. 2025). Other circuits have reached similar conclusions. *See, e.g.*, *Smith v. Kentucky*, 36 F.4th 671, 674 (6th Cir. 2022) (explaining "the Supreme Court has never recognized a cause of action arising directly under the Constitution in a case where § 1983 was available as a remedy" and that "it is unnecessary and needlessly redundant to imply a cause of action arising directly under the Constitution where Congress has already provided a statutory remedy of equal effectiveness through which the plaintiff could have vindicated her constitutional rights" (cleaned up)); *Golden Gate Hotel Ass'n v. City and County of San Francisco*, 18 F.3d 1482, 1486 (9th Cir. 1994) ("[A]ll claims of unjust taking ha[ve] to be brought pursuant to Section 1983 ….").

Section 1983 provides Plaintiffs with their exclusive remedy against the Defendants and this Court must dismiss Plaintiffs' Fourth Amendment claim outright because the availability of the statutory remedy under § 1983 precludes direct claims against Defendants. *See Allen*, 828 F. Supp. at 563 (dismissing direct claims under First Amendment and refusing to construe such claims as § 1983 claims when plaintiffs disavowed reliance on § 1983); *see also Smith*, 36 F.4th at 673-76 (dismissing direct action under Thirteenth Amendment after plaintiffs disavowed reliance on § 1983 because § 1983 claims were time-barred). Plaintiffs' first cause of action fails as a matter of law.

## III. PLAINTIFFS' FOURTH AMENDMENT § 1983 CLAIM FAILS AS A MATTER OF LAW

Plaintiffs' second cause of action is a § 1983 claim predicated on Defendants' alleged violation of the Fourth Amendment. *See* (Dkt. 1-1, ¶¶ 92-5). Specifically, Plaintiffs allege that "Defendants' search of the Flock Location Database is a search that requires a warrant, or applicable warrant exception, under the Fourth Amendment" and "[w]hen Defendants query the Flock Location Database without probable cause and without a warrant (or a valid warrant exception), Defendants violate the Fourth Amendment." (Dkt. 1-1, ¶¶ 77, 89). In addition, Plaintiffs allege that "Defendants' practices and policies authorize their officers and employees to access the Flock Location Database without a warrant and without any valid warrant exception . . . [and] deprive Plaintiffs of the right to be free from unreasonable searches, in violation of the Fourth Amendment and 42 U.S.C. § 1983." (*Id.*, ¶ 95). However, pleading something is a Fourth Amendment violation does not make it so. As will be explained below, contrary to Plaintiffs' allegations, querying the "Flock Location Database" is not a "search" for purposes of the Fourth Amendment and therefore Plaintiffs' claim fails as a matter of law.

"The Fourth Amendment provides, in part, for '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *United States v. Tuggle*, 4 F.4th 505, 512 (7th Cir. 2021) (quoting U.S. Const. amend. IV). "Warrantless searches 'are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *United States v. Edwards*, 769 F.3d 509, 513 (7th Cir. 2014) (quoting *Arizona v. Gant*, 556 U.S. 332, 338 (2009)). Because Plaintiffs allege that Defendants violate the Fourth Amendment when they "access the Flock Location Database without a warrant and without any valid warrant exception," (Dkt. 1-1, ¶ 95), "the

dipositive question is whether a Fourth Amendment search occurred" in the first instance. *Tuggle*, 4 F.th at 512.

"The Supreme Court has developed two distinct paths to identify a search: '[a] search occurs either when the government physically intrudes without consent upon "a constitutionally protected area in order to obtain information," or "when an expectation of privacy that society is prepared to consider reasonable is infringed."'" *Id.* (quoting *United States v. Thompson*, 811 F.3d 944, 948 (7th Cir. 2016)). Because Plaintiffs' claim centers on searches of an electronic database, the second path, which has developed "[t]o grapple with the enhanced technological capacity of law enforcement investigations," is at issue here. *Id.* at 511. The relevant "two-part inquiry [is]: first, has the individual manifested a subjective expectation of privacy in the object of the challenged search? Second, is society willing to recognize that expectation as reasonable?" *California v. Ciraolo*, 476 U.S. 207, 211 (1986) (discussing *Katz v. United States*, 389 U.S. 347, 360 (1967) (Harlan, J., concurring).

Plaintiffs allege that they "and other Wisconsin citizens have a reasonable expectation of privacy in their movements that are captured by the network of Flock cameras and the data available in the Flock Location Database." (Dkt. 1-1, ¶ 86). However, regardless of Plaintiffs' own subjective expectation of privacy, Plaintiffs cannot show, as a matter of law, that society, and the law, are "willing to recognize that expectation as reasonable[.]" *Ciraolo*, 476 U.S. at 211. "A person travelling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another." *United States v. Knotts*, 460 U.S. 276, 281–82 (1983). This is because when a person travels on "public streets he voluntarily convey[s] to anyone who want[s] to look the fact that he [is] travelling over particular roads in a particular direction, the fact of whatever stops he ma[kes], and the fact of his final destination when he

exit[s] from public roads onto private property." *Id.* at 281–82. In addition, "[a] police officer's check of a vehicle registration in a database is not a Fourth Amendment search, as every other circuit that has considered this issue has held." *United States v. Miranda-Sotolongo*, 827 F.3d 663, 667 (7th Cir. 2016) (collecting cases).

Recently, the Seventh Circuit held that "warrantless use of pole cameras to observe a home on either a short- or long-term basis [is not] a 'search' under the Fourth Amendment." *Tuggle*, 4 F.4th at 510-11. The court found this was so because "the government's use of a technology in public use, while occupying a place it was lawfully entitled to be, to observe plainly visible happenings, did not run afoul of the Fourth Amendment." *Id.* at 511. The court reached that conclusion even though Tuggle argued, much as Plaintiffs allege here, that "the government's use of the three pole cameras unconstitutionally 'captured the whole of Mr. Tuggle's movements.'" *Id.* at 524. The same conclusion is warranted here. Quite simply, neither the observation of "plainly visible happenings," nor a search thereof, "run[s] afoul of the Fourth Amendment." *Id.* at 511.

The conclusion is bolstered by the Supreme Court's decision in *Carpenter v. United States*, which Plaintiffs cite in support of their Fourth Amendment claim. *See* (Dkt. 1-1, ¶¶ 80-82, 84, 94) (citing 585 U.S. 296 (2018)). Critically, the Court's holding in *Carpenter* relied, in part, on the fundamental difference between cell phones and vehicles. As the Court observed, "[w]hile individuals regularly leave their vehicles, they compulsively carry cell phones with them all the time. A cell phone faithfully follows its owner beyond public thoroughfares and into private residences, doctor's offices, political headquarters, and other potentially revealing locales." 585 U.S. at 311. For this reason, *Carpenter*, and Plaintiffs' reliance on it, is inapposite.

Quite simply, the use of technology to capture license plate data as alleged in this case and an inquiry into the "Flock Location Database" is not a "search" for purposes of the Fourth Amendment. For this reason, Plaintiffs have failed to state a claim upon which relief can be granted, and their complaint should be dismissed as a matter of law.

## IV. PLAINTIFFS LACK STANDING

Even if this Court finds that Plaintiffs *have* stated a claim for relief, Plaintiffs' complaint must be dismissed because they lack standing. This is so for three reasons. First, Donavan Haidinger, the only individual plaintiff in this case, has failed to allege an injury in fact. Second, neither NoCams Muskego nor Citizens Defending Liberty have alleged facts conferring them associational standing. Third, and finally, none of the Plaintiffs have alleged facts entitling them to taxpayer standing.

### a. Haidinger has not alleged an injury in fact.

Plaintiff Donavan Haidinger, the only individual plaintiff in this lawsuit, does not have standing because he failed to allege an injury in fact.

Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) (quoting U.S. Const., Art. III, § 2). "The doctrine of standing gives meaning to these constitutional limits by 'identify[ing] those disputes which are appropriately resolved through the judicial process.'" *Id.* (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)). "To establish Article III standing, a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Id.* at 157-58 (quoting *Lujan*, 504 U.S. at 560-61). "At the pleading stage, the standing inquiry asks whether the complaint 'clearly . . . allege[s] facts

demonstrating each element' in the doctrinal test." *Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060, 1064 (7th Cir. 2020) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).

"Many disputes about standing turn on the 'injury in fact' requirement, and [this] case[] falls within that category." *Id.* "[T]he injury-in-fact requirement . . . helps to ensure that the plaintiff has a 'personal stake in the outcome of the controversy.'" 573 U.S. at 158 (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). "An injury sufficient to satisfy Article III must be 'concrete and particularized' and 'actual or imminent, not "conjectural" or "hypothetical."'" *Id.* (quoting *Lujan*, 504 U.S. at 560). "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Spokeo*, 578 U.S. at 340. "An allegation of future injury may suffice if the threatened injury is "'certainly impending,' or there is a '"substantial risk" that the harm will occur.'" *Id.* (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013)).

Haidinger alleges that there is "a camera right at the entrance of his subdivision. It is visible from his backyard. Because of the location of his home, Oconomowoc's cameras make a record and take a photograph virtually every time he leaves his neighborhood or returns home." (Dkt. 1-1, ¶ 16). These facts do nothing to confer standing on Haidinger. Plaintiffs do not allege that the cameras themselves violate the Fourth Amendment. Rather, the thrust of Plaintiffs' claim is that warrantless "Flock Location Database" searches violate the Fourth Amendment. *See* (Dkt. 1-1, ¶¶ 92-95). Haidinger does not allege that he has ever been the subject of such a search, or that he is likely to be in the future. This is fatal to his standing.

The Northern District of Illinois recently found that prospective plaintiffs on a similar claim did not have standing related to their claim that similar searches violated the Fourth Amendment. As that court reasoned, "the complaint d[id] not allege any facts indicating a 'substantial risk' that police will soon retrieve plaintiffs' license plate information from the

database." *Scholl v. Illinois State Police*, 776 F. Supp. 3d 701, 710 (N.D. Ill. 2025) (quoting *Susan B. Anthony List*, 573 U.S. at 158). This was so because "Plaintiffs do not allege any 'intention to engage in a course of conduct' that might render their license plates relevant to a criminal investigation." *Id.* (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). The court concluded that, "[a]bsent additional allegations along these lines, plaintiffs face no greater risk of being 'searched' than any other motorist in Cook County"— and that this was insufficient to confer standing. *Id.*

The same is true here. Because Haidinger has failed to allege that he was the subject of a warrantless "Flock Location Database search" by any of the Defendants, he lacks standing to challenge that conduct. For this additional reason, Haidinger's claims fail as a matter of law.

**b. NoCams Muskego and Citizens Defending Liberty lack associational standing.**

The other two Plaintiffs in this case are organizations, not individuals. As explained below, Plaintiffs NoCams Muskego and Citizens Defending Liberty have not alleged facts that allow them to have standing on behalf of their members. For this reason, NoCams Muskego and Citizens Defending Liberty's claims must be dismissed as well.

As alleged in the complaint, "Plaintiff NoCams Muskego, Inc. is a Wisconsin nonstock, nonprofit corporation organized . . . to promote the common good and general welfare of the people of Muskego and Wisconsin by educating the public about mass surveillance and advocating for limits on warrantless tracking." (Dkt. 1-1, ¶ 14). "Plaintiff Citizens Defending Liberty," meanwhile, "is an unincorporated association of taxpayers organized under the laws of the State of Wisconsin." (*Id.*, ¶ 15). Plaintiffs further allege that "NoCams Muskego has recognized a class of supporters, called Members of NoCams Muskego, who have been tracked, and continue to be tracked, in their daily movements without a warrant by cameras owned,

operated, and/or searched by Defendants" and that "[m]embers of [Citizens Defending Liberty] have had, and continue to have, their daily movements tracked by cameras owned, operated, and/or searched by Defendants." (*Id.*, ¶¶ 14, 15). Plaintiffs also allege that "Plaintiffs and their members are all citizens whose Fourth Amendment rights are violated by the warrantless searches of the Flock Location Database." (*Id.*, ¶ 18). None of these allegations are sufficient to confer standing on either organization.

"Associational standing allows an organization to sue on behalf of its members 'even without a showing of injury to the association itself.'" *Prairie Rivers Network v. Dynegy Midwest Generatio*n, LLC, 2 F.4th 1002, 1008 (7th Cir. 2021) (quoting *United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 552 (1996)). In order to do so, "an association must show that: (1) at least one of its members would 'have standing to sue in their own right'; (2) 'the interests it seeks to protect are germane to the organization's purpose'; and (3) 'neither the claim asserted nor the relief requested requires the participation of individual members.'" *Id.* (quoting *Hunt v. Wash. State Apple Advert. Com'n*, 432 U.S. 333, 343 (1977)).

Importantly, and fatal to Plaintiffs' claims, "the Court has required plaintiffs claiming an organizational standing to *identify members* who have suffered the requisite harm[.]" *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009) (emphasis added). Plaintiffs fail to identify, by name or otherwise, a single member of either organization who "suffered the requisite harm." As explained above, the requisite harm here is being the subject of a warrantless "Flock Location Database search" conducted by one of the Defendants. Plaintiffs' generalized assertion that members of their organizations "are all citizens whose Fourth Amendment rights are violated by the warrantless searches of the Flock Location Database" is woefully insufficient to confer

associational standing. (Dkt. 1-1, ¶ 18). This is so because the "requirement of naming the affected members has never been dispensed with in light of statistical probabilities[.] *Summers*, 555 U.S. at 498–99. Supreme Court jurisprudence "require[s] plaintiff-organizations to make *specific* allegations establishing that at least *one identified member* had suffered or would suffer harm." *Id.* at 498 (emphasis added). This is because "'[s]tanding,' . . . 'is not "an ingenious academic exercise in the conceivable" . . . [but] requires . . . a factual showing of perceptible harm.'" *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009) (quoting *Lujan*, 504 U.S. at 566).

Because Plaintiffs have not alleged any *facts* showing that any one of their members have standing, neither NoCams Muskego nor Citizens Defending Liberty may assert standing on behalf of their members. For this additional reasons, Plaintiffs' claims fail and the complaint should be dismissed.

**c. Plaintiffs lack taxpayer standing.**

Finally, Plaintiffs allege that, "[a]s taxpayers, Plaintiffs may challenge Defendants' illegal Flock practices." (Dkt. 1-1, ¶ 90). In addition, Plaintiffs allege that "[a]ll Defendants receive taxes from Plaintiffs either through direct taxation, fees, licenses, or shared revenue payments" and that "Plaintiffs and their members or supporters are also Wisconsin taxpayers whose taxes support Defendants' operations, including Defendants' purchase, use, and operation of Flock cameras and the unconstitutional searches of the Flock Location Database." None of these allegations confer standing on Plaintiffs as state or local taxpayers. (*Id.*, ¶¶ 18-19).

Standing based on status as a Wisconsin taxpayer is a nonstarter. The Supreme Court announced its "general rule against taxpayer standing" in 1923, *Bowen v. Kendrick*, 487 U.S. 589, 618 (1988) (discussing *Frothingham v. Mellon*, 262 U.S. 447 (1923)), and the "rationale for

rejecting federal taxpayer standing applies with undiminished force to state taxpayers." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 345 (2006). "Municipal taxpayer standing is a bit of a relic in the modern landscape of standing." *Protect Our Parks, Inc. v. Chicago Park Dist.*, 971 F.3d 722, 733 (7th Cir. 2020). "Municipal taxpayer standing has two threshold requirements. First, and most obviously, the plaintiff must actually be a taxpayer of the municipality that she wishes to sue. Second, the plaintiff must establish that the municipality has spent tax revenues on the allegedly illegal action." *Id.* at 734 (internal citation omitted).

Because the organizational Plaintiffs fail to identify any of their members, the only plaintiff that is actually a taxpayer is Haidinger, a resident or the Defendant City of Oconomowoc. *See* (Dkt. 1-1, ¶ 16). Therefore, the only Defendant for whom a Plaintiff even fulfills the first prong of municipal taxpayer standing is the City of Oconomowoc. *See Protect Our Parks*, 971 F.3d at 733 n.2 ("Protect Our Parks would only have standing to the extent that 'its members would otherwise have standing to sue in their own right.' But the record is silent, too, on the group's membership. We thus proceed on the understanding that the municipal taxpayer standing argument hinges on [the only individual plaintiff].") (internal citations omitted).

Second, Plaintiffs cannot satisfy the second prong. To do so, Plaintiffs:

> must show "that the municipality has actually expended funds on the allegedly illegal elements of the disputed practice." Moreover, it is not sufficient to show that the municipality has spent some money on the disputed practice. Rather, the proponent of federal jurisdiction must show that any funds spent by the municipality on the allegedly illegal elements of the practice are municipal tax funds rather than funds received from some other source, such as "licensing fees, parking tickets, concessions contracts, [or] federal and state grants."

*Sebring v. Milwaukee Pub. Schs.*, 569 F. Supp. 3d 767, 780 (E.D. Wis. 2021) (quoting *Protect Our Parks*, 971 F.3d at 735-36) (internal citations omitted). Plaintiffs' general allegation that

they are "Wisconsin taxpayers whose taxes support Defendants' operations, including Defendants' purchase, use, and operation of Flock cameras and the unconstitutional searches of the Flock Location Database," (Dkt. 1-1, ¶ 18), is insufficient to make such showing. For this additional reason, Plaintiffs lack standing and their complaint should be dismissed as a matter of law.

## CONCLUSION

For the foregoing reasons, the Court should grant the Defendants' motion to dismiss the claims against them, with prejudice and costs.

Dated this 7th day of October, 2026.


CRIVELLO, NICHOLS & HALL, S.C.
Attorneys for Defendants

By: *s/ Samuel C. Hall, Jr.*
SAMUEL C. HALL, JR.
State Bar No. 1045476
MOLLY K. WOODFORD
State Bar No. 1126884
710 N. Plankinton Avenue, Suite 500
Milwaukee, WI 53203
Phone: 414-271-7722
Email: shall@crivellolaw.com
mwoodford@crivellolaw.com